**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)**

| | |
|---|---|
| **PHILLY PETERSON** and her child,      * | |
| **CHANTIER MOORE**, through her next friend, | |
| Philly Peterson, individually,              * | **CLASS ACTION COMPLAINT** |
| and on behalf of all others similarly situated, | **FOR DECLARATORY RELIEF,** |
| 617 N. Curley Street                     * | **INJUNCTIVE RELIEF AND** |
| Baltimore, MD 21205 | **DAMAGES** |
| Baltimore City                          * | |
| (443) 224-6207 | |
|             And          * | |
| | |
| **TANYA BULLOCK** and her child,     * | CIVIL ACTION NO._____ |
| **BRANDON SMITH**, through his next friend, | |
| Tanya Bullock, individually,           * | |
| and on behalf of all others similarly situated, | |
| 4000 Southwestern Boulevard         * | |
| Arbutus, MD 21229 | |
| Baltimore County                  * | |
| (410) 247-6286 | |
|                  * | |
|            and          * | |
| | |
| **HATTIE WHEELER** and her children, | |
| **LANIJA TAYLOR**,                * | |
| **KAMIRAH TAYLOR**, through their next friend, | |
| Hattie Wheeler, individually,         * | |
| and on behalf of all others similarly situated, | |
| 10203 Jensen Lane                 * | |
| Owings Mills, MD 21117 | |
| Baltimore County                  * | |
| (443) 676-2292 | |
|                  * | |
|        Plaintiffs,          * | |
|          v.                  * | |
|                  * | |
| **BOARD OF EDUCATION OF**       * | |

**BALTIMORE COUNTY**
6901 N. Charles Street                                    *
Towson, MD  21204
Baltimore County                                          *
(410) 887-4126
                                                          *
                        and
                                                          *
**DR. JOE A. HAIRSTON**, Superintendent of
Schools, Baltimore County Public                          *
Schools, in his official capacity,
6901 N. Charles Street                                    *
Towson, MD 21204
Baltimore County                                          *
(410) 887-4281
                                                          *
        Defendants.
*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## I.  INTRODUCTION

1.      The Plaintiffs are homeless children and their mothers.  Two of the named Plaintiff

children have suffered an interruption in their schooling during the last quarter of the school year

and face adverse academic impact.  The remaining two named Plaintiff children, siblings, have

still not been identified as homeless by Defendants despite more than a year stay in a

combination of emergency shelter and transitional housing, resulting in the Plaintiffs struggling

to get to school and accessing other necessary services.  All of the Plaintiffs face these

unnecessary hardships because Defendants have failed or refused, despite their obligations under

federal law, to identify, inform, and provide educational stability and continuity to these

homeless students.

2.      Plaintiffs bring this action on behalf of themselves and all others similarly situated,

challenging the failure or refusal of the Board of Education of Baltimore County ("Board of

Education") and the Superintendent of Schools ("Superintendent") to comply with the

2

McKinney-Vento Homeless Education Assistance Improvements Act of 2001, 42 U.S.C. §§ 11431-11435 (2002) ("McKinney-Vento" or "the Act").  Specifically, the Board of Education and Superintendent (collectively, "Defendants") have adopted policies or established a custom, pattern or practice that violates the rights of homeless children and their parents under McKinney-Vento.

3.    Plaintiffs seek declaratory and injunctive relief and damages and ask this Court to enter an order (a) declaring that Defendants are in violation of McKinney-Vento; (b) requiring Defendants to comply with McKinney-Vento; and (c) awarding damages or restitution to named Plaintiffs Tanya Bullock and Hattie Wheeler.

## II.  JURISDICTION AND VENUE

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1343(a)(3), on the ground that this action arises under the laws of the United States.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), on the ground that the events or omissions giving rise to the claim occurred in Maryland.

6.    Plaintiffs have been deprived of their federal statutory rights, and bring this action pursuant to 42 U.S.C. § 1983.

7.    There is an actual controversy between the Plaintiffs and the Defendants within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

## III.  PARTIES

A.  Plaintiffs

8.    Plaintiff PHILLY PETERSON is a resident of Baltimore City, Maryland.  She lived in transitional housing at Innterim in Baltimore County for approximately seven months from

3

October 2005 until April 2, 2006, with her three minor children.  She and her family moved into permanent housing in Baltimore City on or about April 3, 2006.  She brings this action on her own behalf and as next friend of her daughter, Chantier Moore.

9.    Plaintiff CHANTIER MOORE, age seven, is a resident of Baltimore City, Maryland, and lived in transitional housing at Innterim in Baltimore County for approximately seven months until April 2, 2006, along with her mother and two younger sisters.  She and her family moved into permanent housing in Baltimore City on April 3, 2006.  Chantier missed nearly two weeks of school because her mother was never informed of their McKinney-Vento rights and the Baltimore County Public Schools have failed or refused to provide her with safe, adequate transportation to her county school absent the intervention of undersigned counsel.  She brings this action through her mother and next friend, Philly Peterson.

10.    Plaintiff TANYA BULLOCK is a resident of Baltimore County, Maryland, and presently lives at the YWCA Arbutus emergency shelter with her son.  Ms. Bullock and her family were evicted from their apartment in Rosedale, Baltimore County, in early April 2006, which rendered them homeless.  She brings this action on her own behalf and as next friend of her son, Brandon Smith.

11.    Plaintiff BRANDON SMITH is a resident of Baltimore County and presently lives at the YWCA Arbutus emergency shelter with his mother.  He and his mother were evicted from their apartment in Rosedale in early April 2006.  Brandon, who receives special education services for Attention Deficit Hyperactivity Disorder (ADHD) and suffers emotional difficulties, would have been forced to commute over one hour each way to his county school by public bus but for the intervention of undersigned counsel.  The taxicab service Brandon now receives is erratic,

forcing him to miss valuable classroom instruction, special education services, and free breakfast at school.  He brings this action through his mother and next friend, Tanya Bullock.

12.    Plaintiff HATTIE WHEELER is a resident of Baltimore County and presently lives in transitional housing at Innterim in Owings Mills.  Ms. Wheeler and her family lost their permanent housing in Carroll County in March 2004, which rendered them homeless.  She brings this action on her own behalf and as next friend of her children Lanija Taylor and Kamirah Taylor.

13.    Plaintiff LANIJA TAYLOR is a resident of Baltimore County and presently lives in transitional housing at Innterim in Owings Mills with her mother and siblings.  She and her family lost their permanent housing in Carroll County in March 2004.  Lanija has not been identified as homeless by Baltimore County Public Schools and is not receiving school-provided transportation other services.   She brings this action through her mother and next friend, Hattie Wheeler.

14.    Plaintiff KAMIRAH TAYLOR is a resident of Baltimore County and presently lives in transitional housing at Innterim in Owings Mills with her mother and siblings.  She and her family lost their permanent housing in Carroll County in March 2004.  Kamirah has not been identified as homeless by Baltimore County Public Schools and is not receiving school-provided transportation services.  She brings this action through her mother and next friend, Hattie Wheeler.

B.  Class Action Allegations

15.    The named Plaintiffs bring this action on behalf of two proposed Plaintiff classes ("Class A," the "children class;" and "Class B," the "parent class"), pursuant to Fed. R. Civ. P. 23.  The

proposed classes are defined as follows:

      a.  <u>Class A</u>:  All school-aged children aged three and older who, on or after April 27, 2003: (1) have resided, reside or will reside in Baltimore County, Maryland; and (2) during such period have been, are, or will be "homeless"  as defined in McKinney-Vento, 42 U.S.C. § 11434a(2).

      b.  <u>Class B</u>:  All parents, guardians and adults responsible for children in Class A ("Class B").

16.    Approximately nine hundred (900) homeless Baltimore County children were served by the shelter system during the period July 1, 2004 to June 30, 2005; this number does not include any homeless children who are living doubled-up with family or friends due to a loss of housing. Yet, Baltimore County Public Schools reported to the Maryland State Department of Education that only six hundred and eighty-five (685) students were identified as homeless by its school system during the 2004-2005 school year.  On information and belief, most of the homeless children identified and served by Baltimore County Public Schools experience such basic denial of their McKinney-Vento rights as delays in enrollment to the school closest to where they are temporarily living, and failure to provide timely and adequate transportation where the parent chooses to maintain school continuity.  Without access to an adequate and uninterrupted education, these children face serious setbacks in their developmental path to becoming productive, self-sufficient adults.

17.    Members of the proposed classes number at least in the hundreds.  In addition to the at least six hundred eighty-five (685) children who would be members of Class A, there are at least as many parents of these children who would be members of Class B.  Because the members of

the classes are so numerous and because many class members lack any fixed and regular residence, joinder is impracticable.

18.    There are questions of law and fact common to the classes.

19.    The claims of the named Plaintiffs are typical of the claims of the two classes.

20.    The representative Plaintiffs will fairly and adequately protect the interests of the classes. They are ready and able to pursue this case in the interests of the classes and have no interests adverse to those of the classes they seek to represent.  They have retained counsel with sufficient expertise in class action and civil rights litigation to prosecute the case.

21.    The Defendants have acted or refused to act on grounds that are generally applicable to the classes, thereby making appropriate injunctive relief and declaratory relief with respect to the classes as a whole.

B.  Defendants

22.    Defendant BOARD OF EDUCATION OF BALTIMORE COUNTY is a body politic and corporate with control over all educational matters affecting Baltimore County and responsible for the general supervision and management of the Baltimore County Public Schools.  As such, it is responsible for ensuring compliance with federal, state and local laws governing this system.

23.    Defendant DR. JOE A. HAIRSTON is the Superintendent of Schools for the Baltimore County Public Schools.  As such, and as the agent for the Board, he is immediately responsible for ensuring compliance with federal, state and local laws governing the Baltimore County Public School system.  He is sued in his official capacity.

24.    At all relevant times, Defendants were acting under color of state law.

IV.  STATEMENT OF CLAIM

A.  McKinney-Vento

25.    McKinney-Vento was enacted in 1987, Pub. L. No. 100-77, § 102(b)(2), 100 Stat. 482,

485 (codified as amended at 42 U.S.C. §§ 11301-11472), to provide a broad range of assistance

to homeless individuals and families.  Subtitle VI-B of McKinney-Vento relates to the education

of homeless children and youth.  42 U.S.C. §§ 11431-11435.

26.    The purpose of McKinney-Vento is to ensure that "each homeless youth has equal access

to the same free, appropriate public education, including preschool education as provided to

other children and youths."  *Id.* at § 11431(1).

27.    Under McKinney-Vento, "state educational agencies" such as the Maryland State

Department of Education ("MSDE") receive funds from the federal government and may make

subgrants to "local educational agencies" such as the Board of Education of Baltimore County.

28.    On information and belief, the Board of Education receives McKinney-Vento Act funds

from MSDE.

29.    As a local educational agency ("LEA") receiving McKinney-Vento funds, the Board of

Education is required to comply with the provisions of McKinney-Vento.

30.    Defendants must provide homeless students a school choice.  Either allow homeless

students to continue their education in the school they were last attending or the school they

attended when permanently housed (the "school of origin" or "home school"); or, enroll the

student in the local school serving the area where the student is staying while homeless (the

"local school").  *Id.* at § 11432(g)(3)(A).

31.    Defendants "shall[,] to the extent feasible, keep a homeless child or youth in the school

of origin, except when doing so is contrary to the wishes of the child's or youth's parent or guardian." *Id.* at § 11432(g)(3)(B)(i).

32.    Defendants must provide transportation services to the school of origin. *Id.* at § 11432(g)(1)(J)(ii)(I).

33.    When a student is living in another school's jurisdiction, Defendants have two options in terms of transportation: coordinate transportation services between the two school districts, or if they are unable to agree on such a method, share equally the costs of transporting the child. *Id.* at § 11432(g)(1)(J)(ii)(II).

34.    Defendants must "immediately enroll [a] homeless child or youth, even if the child or youth is unable to produce records normally required for enrollment, such as previous academic records, medical records, proof of residency, or other documentation." *Id.* at § 11432(g)(3)(C)(i).

35.    Defendants must provide homeless children comparable services, including transportation and school nutrition. *Id.* at § 11432 (g)(4).

36.    Homeless children and youths have the right to attend either the school of origin or the local school "for the duration of homelessness" or, in the case of a student who finds permanent housing during the school year "for the remainder of the academic year." *Id.* at § 11432(g)(3)(A).

37.    In the event Defendants send a homeless student "to a school other than the school of origin or a school requested by the parent or guardian," it must provide a written explanation, along with notice of the right to appeal. *Id.* at § 11432(g)(3)(B)(ii).

38.    If there is a dispute about enrollment, the child or youth must be immediately admitted to

school in which enrollment is sought pending resolution of the dispute process.  *Id.* at §
11432(g)(3)(E).

39.    Defendants "shall review and revise any policies that may act as barriers to the
enrollment of homeless children," including policies concerning transportation.  *Id.* at §
11432(g)(7).

B.  Plaintiffs Philly Peterson's and Chantier Moore's Allegations

40.    Plaintiff Philly Peterson ("Ms. Peterson") is the mother of three minor children, Chantier
Moore ("Chantier"), age seven, Jada Peterson ("Jada"), age five, and Koriona Davis
("Koriona"), age four months.

41.    Ms. Peterson and her children, including Chantier, became homeless in November 2004
when they were evicted from their apartment in Baltimore City.  From November 2004 through
early 2005, they were homeless in Baltimore City.

42.    At that time, Chantier was attending first grade at Edgecombe Circle Elementary School
("Edgecombe") in Baltimore City.  Chantier missed a lot of school during that time because the
family moved frequently.

43.    In early April 2005, Ms. Peterson and her children began staying at the Hannah More
Shelter in Reisterstown, Baltimore County.

44.    Upon information and belief, a Pupil Personnel Worker ("PPW") employed by
Defendants is supposed to serve residents of Hannah More.

45.    However, during her stay at Hannah More Ms. Peterson was never informed by a PPW
that Chantier might have particular educational rights under McKinney-Vento, including
transportation between the county shelter and the city school she last attended or immediate

10

enrollment in the local county school.

46.    Even though the commute by public transportation between Hannah More and Edgecombe was two-and-a-half hours one way, Ms. Peterson, who was about three months pregnant at the time, took Chantier, along with young Jada, to attend classes at her city school on three different occasions while at Hannah More.

47.    Frustrated with putting her children through the constant moves occasioned by staying in shelters that allowed only short-term stays, Ms. Peterson made the difficult decision to temporarily place her children in the care of a family member while she tried to find stability. This move allowed Chantier to resume classes at Edgecombe, but Chantier ended up failing the first grade due to excessive absences as a direct result of homelessness.

48.    Plaintiffs' next encounter with Defendants occurred in October 2005.  On or about October 10, 2005, Ms. Peterson and her children moved to Pikesville, Baltimore County, to transitional housing at Innterim.

49.    It took Ms. Peterson approximately two weeks to enroll Chantier in Milbrook Elementary School ("Milbrook"), the local school closest to Innterim.  Ms. Peterson was told by Innterim staff that the school required Chantier's school records from Edgecombe before she could go to the school building to register her daughter.  Innterim staff gathered the school records for Ms. Peterson.

50.    No one in the Baltimore County Public Schools ever informed Ms. Peterson that Chantier should be enrolled immediately, without waiting for school or other records.

51.    There was a two-to-three day delay in free lunch service and Ms. Peterson had to complete a free lunch application for Chantier.

52.     No one in the Baltimore County Public Schools informed her that Chantier was automatically eligible for free lunch because she was homeless.

53.     Ms. Peterson, who had a very limited income of temporary cash assistance, had to pay a $7.00 field trip fee for Chantier to go to a museum.

54.     No one in the Baltimore County Public Schools ever informed Ms. Peterson that such fees should have been waived because Chantier was homeless.

55.     Chantier has adjusted to Milbrook and is on track to pass the first grade.  Chantier enjoys school, her friends and her teachers.

56.     On or about March 31, 2006, not knowing her McKinney-Vento rights, Ms. Peterson called the front office at Milbrook to request that Chantier's school records be prepared for a school transfer because they were moving to Baltimore City.

57.     At no time did school personnel inquire about the circumstances of the move or otherwise take steps that would have identified Chantier as homeless or inform Ms. Peterson of her right to keep Chantier at Milbrook for the remainder of the school year.

58.     On or about April 3, 2006, Ms. Peterson and her family moved from Innterim and into permanent housing in Baltimore City at 617 N. Curley Street.

59.     No school personnel ever informed Ms. Peterson of Chantier's McKinney-Vento rights to remain at Milbrook for the remainder of the school year and to be transported to school.

60.     Chantier did not attend school the entire week of April 3, 2006 because Ms. Peterson did not have a means of transporting her to and from that school.

61.     The following week, April 10 through April 17, Baltimore County schools were closed for spring vacation, and classes resumed on April 18.

62.    On or about April 12, 2006, Ms. Peterson requested transportation for Chantier to enable her to attend her school of origin.  She left a voice mail message for Mr. Carl Love, Defendants' Homeless Education Coordinator or Liaison.  She did not receive any response.

63.    On or about April 18, 2006, Ms. Peterson once again called Carl Love and requested transportation for Chantier.  Mr. Love presented only two options to Ms. Peterson:  Chantier could take the MTA bus or enroll her in a new school.  Ms. Peterson explained that the public bus was not a viable option because she has a preschooler and a four-month-old at home in addition to Chantier.  Mr. Love stated that Baltimore County school buses do not go into Baltimore City.  He further stated that he could either meet with Ms. Peterson to explain her rights to her or mail her the information.  Ms. Peterson requested that the information be mailed.

64.    On April 19, after undersigned counsel's intervention, Mr. Love contacted Ms. Peterson and suggested two more options:  she could ride in a taxi cab with Chantier to and from school, or the school system could reimburse an adult family member or friend who was able to drive Chantier to and from school.  Ms. Peterson explained that she could not ride in a cab with Chantier at that time because she was in the hospital.  She agreed to call friends and family to see if they could drive Chantier to and from school.  Unfortunately, no one was available to do so.

65.    On April 20, Ms. Peterson was discharged from the hospital.  Cab service was arranged for Chantier and Ms. Peterson as a short-term transportation solution.  Chantier, her younger sisters, and Ms. Peterson rode together to and from school in the cab.

66.    Chantier finally started back to school on Friday, April 21.

67.    Ms. Peterson has been very ill during the past month and she has two younger children to care for, which raised serious concerns that the cab arrangement was not an adequate long-term

solution.  If Ms. Peterson or one of the other children became ill, Chantier would be forced to miss school.  Also, the cab pick-up times interfered with the newborn's sleep schedule.

68.    On April 24, Ms. Peterson was contacted by Mr. Love and informed that school bus service would begin for Chantier on Wednesday, April 26.

69.    Later that day, she spoke with the bus driver who explained that the bus will pick Chantier up between 8:30 a.m. and 9:00 a.m.

70.    A pick-up time between 8:30 and 9:00 was not adequate because Chantier would miss school breakfast at 8:40 a.m. and be late for school, which begins at 9:00 a.m.

71.    On April 25, Ms. Peterson called Mr. Love to inform him of the inadequacy of the bus arrangements.  Ms. Peterson learned that the bus was scheduled to arrive at 8:15 a.m.

72.    An 8:15 pick-up time was still inadequate to deliver Chantier to school in time to have school breakfast at 8:40 and begin class at 9:00 a.m..

73.    The bus did not arrive at the scheduled time; it arrived at approximately 8:30 a.m.

74.    Defendants failed to identify Plaintiffs as homeless and afford them the protections of McKinney-Vento in April 2005.

75.    Defendants failed to immediately enroll Chantier in the local school in October 2005.

76.    Defendants have failed to provide comparable services to Plaintiffs.

77.    Defendants have failed to inform Plaintiffs of their rights under McKinney-Vento.

78.    Defendants have failed to provide Plaintiff Chantier Moore school continuity.

79.    Defendants have failed to inform Plaintiffs of the availability of transportation to facilitate the continued attendance of Chantier at her school of origin.

80.    Defendants have failed to provide adequate transportation to facilitate Chantier's

continued attendance at her school of origin.

81.    As a result of this failure, Chantier has been forced to miss school for unreasonable periods.

82.    Defendants have failed to implement services to promote Chantier's academic success.

83.    Defendants have failed to inform Plaintiffs of, or provide them access to, a prompt and effective dispute resolution process, including the right to remain in school with transportation pending the outcome of such process.

84.    Defendants have failed to review and revise their policies to remove barriers to the enrollment, retention and success in school of homeless children and youth.

B.  Plaintiffs Tanya Bullock's and Brandon Smith's Allegations

85.    Plaintiff Tanya Bullock ("Ms. Bullock") is the mother of one minor child, Brandon Smith.  Ms. Bullock and her son became homeless in early April 2006 when they were evicted from their townhouse at 6132 St. Regis Road, Baltimore, Maryland 21206.

86.    Currently, Ms. Bullock and Brandon stay at the YWCA Shelter in Arbutus, Baltimore County, and they arrived at the shelter on or about April 10, 2006.

87.    Brandon is enrolled at The Rosedale Center ("Rosedale"), an alternative middle and high school operated by Defendants.

88.    Brandon suffers from Attention Deficit Hyperactivity Disorder (ADHD) and has emotional difficulties.

89.    Brandon has been identified as requiring special education services and has an Individualized Educational Program ("IEP").

90.   On or about April 5, 2006, Ms. Bullock spoke with Ms. Sharon Davis at Rosedale and told her that she was being evicted.  Ms. Davis referred Ms. Bullock to Mr. Carl Love, the Homeless Education Coordinator or Liaison, but Mr. Love never returned Ms. Bullock's phone message.

91.   At no point did Ms. Davis tell Ms. Bullock that Brandon could continue to attend The Rosedale Center or offer any explanation of her rights as a homeless parent.

92.   Ms. Bullock believed that she would have to transfer Brandon to another school.

93.   On or about Friday, April 7, 2006, Ms. Bullock called Carl Love and left a message.  He did not return the call.

94.   The Plaintiffs arrived at the YWCA shelter on or about Monday, April 10, 2006, which was the first day that Baltimore County schools closed for a week of spring vacation.  At the shelter, Ms. Bullock learned that parents of homeless students can choose for their children to continue in their original schools with transportation if they believe it is in their child's best interest.

95.   Ms. Bullock began inquiring into ways to keep Brandon in Rosedale with minimal disruption for him.  Brandon does not handle change well, and she wanted to arrange transportation so that he could continue at Rosedale, like the rest of the students, as soon as spring vacation ended.  She feels very strongly that it would be best for him to continue his education at the school he knows rather than switching to a new environment, especially so near the end of a school year.

96.   On or about Tuesday, April 11, 2006, Ms. Bullock called Carl Love again to request transportation to keep Brandon at Rosedale.  She was told that Mr. Love was out on vacation all

week, and that she would have to wait until the following Tuesday, April 18, to get through to him.

97. During the next two days, Ms. Bullock also called a number of other school personnel with similar results.

98. Ms. Bullock called Dale Rauenzahn, the Executive Director of Student Support Services and did not receive a return call.

99. Ms. Bullock called Ms. Gwen Grant, the Coordinator of Pupil Personnel Services and did not receive a return call.

100. Ms. Bullock called Linda Fitchett, the Director of Transportation and did not receive a return call.

101. Finally, on or about Friday, April 14, 2005, Ms. Bullock called Dr. Joe A. Hairston, the Superintendent of Baltimore County Public Schools.  Dr. Hairston was also on vacation, Ms Bullock left a voicemail message.

102. When the schools re-opened on Tuesday, April 18, 2006, Ms. Bullock had not heard back from anyone, so she again called to get transportation for Brandon to Rosedale.

103. Mr. Love and his assistant stated that the only transportation they could provide would be by public transportation, and that it would take Brandon about an hour and fifteen minutes to get to school.  Ms. Bullock was told they would give him bus tokens, and he would need to catch a bus near the shelter at about 5:50 a.m.

104. Ms. Bullock explained that she was concerned about Brandon riding public transportation.  He may be fifteen years old, but with his ADHD and his emotional difficulties, she was concerned that he would not make it to and from school on a regular basis.  Also, she

17

explained to Mr. Love that Brandon is living in a new area, where he does not know people, and they do not know him.  She was concerned that he may not be safe taking public transportation in the dark and at extreme hours.

105.   Mr. Love's response to Ms. Bullock's dissatisfaction was to indicate that Brandon could transfer to an alternative school in Catonsville.

106.   Ms. Bullock did not agree to this proposal because it would require him to go to a separate evening school program in addition to the new day school, causing even more disruption and change.

107.   Because no arrangements were made when Ms. Davis called, when Ms. Bullock called, or throughout the week of spring break, Brandon could not attend school on Tuesday, April 18, 2006.

108.   Each day of school that Brandon misses or that he is late for classes is missed opportunity for Brandon to receive special education services pursuant to his IEP.

109.   Ms. Bullock believes that public transportation will be a barrier to Brandon's school continuity.

110.   Because Brandon was not in school and the shelter does not allow children to stay in the shelter alone during the day, Ms. Bullock had to miss work on Tuesday, April 18, 2006.  Every day that Plaintiffs are at the shelter and Brandon is either out of school or late leaving for school is another day that Ms. Bullock must take off work.

111.   Because of this, Ms. Bullock felt pressured to agree to let Brandon take public transportation to Rosedale, against her better judgment, because she believes such transportation is inadequate and potentially dangerous for her son.

112.   On or about April 19, 2006 was Brandon's first day back to school since arriving at the shelter, and Defendants had agreed that for that day only taxicab service would be available.

113.   Brandon's school begins at 7:15 a.m., and the cab did not arrive until approximately 7:20 a.m.  Brandon was late to school.

114.   On or about April 19, 2006, Ms. Bullock missed another day of work.

115.   The following day, April 20, after intervention of undersigned counsel, Defendants continued to send the cab, and the cab again arrived late to pick-up Brandon in the morning. Brandon was late to school.

116.   On or about April 21, the cab again arrived late to pick-up Brandon.

117.   On or about April 24, the cab again arrived late to pick-up Brandon.

118.   On or about April 25, the cab again arrived late to pick-up Brandon.

119.   No timely transportation has been provided, causing Brandon to be late to school and miss school breakfast service.

120.   Ms. Bullock was given an application to complete in order for Brandon to receive free and reduced-price meals service.

121.   Defendants have failed to inform Plaintiffs of their rights under McKinney-Vento.

122.   Defendants have failed to provide Plaintiff Brandon Smith school continuity.

123.   Defendants have failed to promptly inform Plaintiffs of the availability of transportation to facilitate Brandon's continued, uninterrupted attendance at his school of origin.

124.   Defendants have failed to provide adequate and appropriate transportation to facilitate Brandon's continued attendance at his school of origin.

125.   As a result of this failure, Brandon has been forced to miss school.

126.  Defendants have failed to immediately implement Brandon's IEP.

127.  Defendants have failed to implement services to promote Brandon's academic success.

128.  Defendants have failed to provide Brandon with comparable services, including free and reduced-price meals.

129.  Defendants failed to inform Plaintiffs of, or provide them access to, a prompt and effective dispute resolution process, including the right to remain in school with transportation pending the outcome of such process.

130.  Defendants have failed to review and revise their policies to remove barriers to the enrollment, retention and success in school of homeless children and youth.

C.  Plaintiffs' Hattie Wheeler, Lanija Taylor, and Kamirah Taylor

131.  Plaintiff Hattie Wheeler ("Ms. Wheeler") is the mother of four minor children, Lanija Taylor, age seven, Kamirah Taylor, age six, Jaheim Taylor, age four, and Nashon Taylor, age four months.

132.  Ms. Wheeler and her children became homeless in March of 2004.  Until the family could find emergency shelter placement, Ms. Wheeler temporarily placed her children doubled-up with family while she lived in her car and at different motels.

133.  Lanija is enrolled at Milbrook Elementary School in Pikesville, Baltimore County, and she has attended Milbrook since September 2004.

134.  Kamirah is enrolled at Milbrook Elementary School in Pikesville, Baltimore County, and she has attended Milbrook since September 2004.

135.  In May 2005, Ms. Wheeler and her children stayed at the Hannah More Shelter, an emergency shelter in Reisterstown, Baltimore County.  At times, while Ms. Wheeler was at the

shelter, the children would stay doubled-up with their paternal grandmother.

136.   Upon information and belief, a pupil personnel worker ("PPW") employed by Defendants is supposed to serve residents of Hannah More.

137.   However, during her three month stay at Hannah More, Ms. Wheeler was never informed by a PPW that her children might have particular educational rights under McKinney-Vento, including transportation between the shelter and their school of origin.

138.   In or about September 2005, Ms. Wheeler and her children moved to transitional housing at Innterim in Owings Mills, Baltimore County, which is where they are currently staying.

139.   In September 2005, Ms. Wheeler notified school personnel at Milbrook that she had moved to Innterim.

140.   School personnel at Milbrook failed to inform her of any of her children's McKinney-Vento rights, including school transportation.

141.   From September 2005 to the present time, Ms. Wheeler and the children's father have transported Lanija and Kamirah to and from school.

142.   Ms. Wheeler pays out-of-pocket to transport the children to and from school.

143.   The children did not receive free and reduced-price meals until the middle of this school year.

144.   In order to receive the service Ms. Wheeler had to complete an application form to prove she received food stamps.

145.   Ms. Wheeler has paid out-of-pocket for several class field trips.

146.   Defendants failed to identify Plaintiffs as homeless and afford them the protections of McKinney-Vento in May 2005 and again in September 2005.

147.   Defendants have failed to provide Plaintiffs transportation to their school of origin.

148.   Defendants have failed to provide comparable services to Plaintiffs.

149.   Defendants have failed to inform Plaintiffs of their rights under McKinney-Vento.

150.   Defendants failed to inform Plaintiffs of, or provide them access to, a prompt and effective dispute resolution process, including the right to remain in school with transportation pending the outcome of such process.

151.   Defendants have failed to review and revise their policies to remove barriers to the enrollment, retention and success in school of homeless children and youth.

D.   Defendants' Policies, Custom, Pattern and Practice

152.   Defendants have policies or engage in a custom, pattern or practice of:

a)   failing to identify homeless children and youth attending Baltimore County Public Schools;

b)   failing to inform homeless children and youth and their parents or guardians of their rights under McKinney-Vento;

c)   failing to adequately train school personnel to understand the specific needs and educational rights of homeless children and youth;

d)   failing to ensure that homeless children and youth are able to continue to attend their schools of origin, if feasible, except when doing so is contrary to the wishes of the student's parent or guardian;

e)   failing to immediately enroll homeless children and youth in the local school closest to where the student is temporarily housed, when that is the choice of the parent or guardian;

f)   denying homeless children the opportunity to remain in their schools of origin if they are

temporarily housed outside of Baltimore County or obtain permanent housing during the academic year;

g)  failing to adequately coordinate with other local educational agencies on interdistrict issues such as transportation;

h)  failing to provide homeless children with transportation to and from their schools of origin;

i)  failing to inform homeless children and youth and their parents or guardians of the availability of a dispute resolution process;

j)  failing to provide a prompt and effective dispute resolution process for homeless children and youth and their parents or guardians, including the right to remain in school with transportation pending the outcome of such process;

k)  failing to provide educational services to homeless children and youth that are comparable to those provided to housed children;

l)  failing to provide school nutritional programs to homeless children and youth;

m) failing to coordinate with local social services agencies and State and local housing agencies to provide services to homeless children and youth and their parents or guardians and to minimize educational disruption for homeless children and youth;

n)  failing to recognize as homeless and entitled to protections under McKinney-Vento all categories of persons defined as homeless therein;

o)  failing to review and revise their policies to remove barriers to the enrollment, retention and success in school of homeless children and youth, including unaccompanied youth.

153.  As a direct and proximate result of Defendants' many violations of McKinney-Vento,

Baltimore County's homeless students routinely are denied many of their rights under McKinney-Vento resulting in lack of access to educational opportunities and reduced chances of success in school.

E.  Injury to Plaintiffs

154.  As set forth in the foregoing paragraphs and as a result of Defendants' policies, customs, patterns or practices, Plaintiffs have suffered and continue to suffer immediate and irreparable harm.

155.  Plaintiff Chantier Moore is repeating the first grade as a direct result of homelessness she experienced last school year, which led to excessive absences.  Now, at the end of the school year she has experienced another educational disruption along with a move to new surroundings.

156.  Plaintiff Tanya Bullock has missed time from work, and consequently wages, because when Brandon is not in school, she cannot leave him at the shelter alone and a late pick-up to school results in a lost day of work.

157.  Plaintiff Brandon Smith has missed a day of school and special education services, and he continues to be late to school as a direct result of the inadequate transportation provided by Defendants.

158.  Plaintiff Hattie Wheeler continues to pay out-of-pocket to take her daughters to and from school despite Defendants' clear obligation under the law to provide transportation to their school of origin.  The economic cost is difficult to bear and Ms. Wheeler has the added stress of caring for a newborn baby.

159.  Plaintiffs Lanija Taylor and Kamirah Taylor have still not been identified as homeless

and are currently struggling to get to school because of Defendants' non-compliance with the

Act.

160.  Plaintiffs' injuries are the direct and proximate result of Defendants' failure to comply

with McKinney-Vento.

161.  Plaintiffs have no adequate remedy at law.

## V.  CAUSE OF ACTION

Violations of McKinney-Vento

162.  Plaintiffs repeat and incorporate by reference the allegations as set forth above, and

further allege:

163.  Defendants have violated the rights of the Plaintiffs under McKinney-Vento, 42 U.S.C.

§§ 11431 - 11435.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

A.  Grant a preliminary injunction requiring Defendants to provide timely school bus or other

safe and adequate transportation to enable Plaintiff Chantier Moore to attend Milbrook

Elementary School through the end of this school year;

B.  Grant a preliminary injunction requiring Defendants to provide timely school bus or other

safe and adequate transportation to enable Plaintiff Brandon Smith to attend The Rosedale

Center as long as he continues to be homeless as defined in McKinney-Vento;

C.  Grant a preliminary injunction requiring Defendants to provide timely school bus or other

safe and adequate transportation to enable Plaintiff Lanija Taylor to attend Milbrook Elementary

School for as long as she continues to be homeless as defined in McKinney-Vento;

D.  Grant a preliminary injunction requiring Defendants to provide timely school bus or other safe and adequate transportation to enable Plaintiff Kamirah Taylor to attend Milbrook Elementary School for as long as she continues to be homeless as defined in McKinney-Vento;

E.  Certify this case as a class action under Fed. R. Civ. P. 23(b)(2).

F.  Declare that Defendants' policies, customs, patterns or practices as described herein violate McKinney-Vento;

G.  Preliminarily and permanently enjoin Defendants from keeping in effect, maintaining, or encouraging any of the policies, customs, patterns or practices declared to be violative of law;

H.  Award Plaintiff Tanya Bullock damages or restitution for lost wages suffered;

I.  Award Plaintiff Hattie Wheeler damages or restitution for costs incurred transporting Lanija and Kamirah to and from school beginning in May 2005;

J.  Award Plaintiffs their costs and reasonable attorneys' fees; and

K.  Award such other and further relief as the Court may deem appropriate.

Respectfully submitted,

_____/s/_____
Francine K. Hahn (Federal Bar No. 25227)
Sally Dworak-Fisher (Federal Bar No. 27321)
PUBLIC JUSTICE CENTER
500 East Lexington Street
Baltimore, MD 21202
(410) 625-9409
(410) 625-9423 facsimile
hahnf@publicjustice.org
dworak-fishers@publicjustice.org

*Attorneys for Plaintiffs*

Dated: April 27, 2006

26